<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HOWARD BONDURANT,                     :
                                      :  Civil Action No. 10-3005 (FSH)
                Plaintiff,            :
                                      :
                                      :
                v.                    :    **OPINION**
                                      :
CHRIS CHRISTIE, et al.,               :
                                      :
                Defendants.           :

**APPEARANCES:**

        HOWARD BONDURANT, Plaintiff <u>pro se</u>
        #000384
        Special Treatment Unit
        8 Production Way, CN 905
        Avenel, New Jersey 07001

**HOCHBERG,** District Judge

        Plaintiff, Howard Bondurant, an involuntarily committed
person pursuant to the Sexually Violent Predator Act ("SVPA"),
<u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in forma</u>
<u>pauperis</u>.  Based on his affidavit of indigence, the Court will
grant plaintiff's application to proceed <u>in forma pauperis</u>
("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the
Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint, and the
amended Complaint submitted on August 31, 2010, pursuant to 28
U.S.C. § 1915(e)(2), to determine whether this action should be
dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be dismissed without prejudice at this time.

## I.  BACKGROUND

Plaintiff, Howard Bondurant ("Bondurant"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Mrs. B. Hasting, Superintendent - Special Treatment Unit ("STU"); Steven Johnson, Assistant Superintendent - STU; and Merril Main, NJDHS Administrator.  (Complaint and Amended Complaint, Caption and ¶¶ 4b-4f).  The following factual allegations are taken from the Complaint and amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Bondurant alleges that, on May 18, 2010, defendant Steve Johnson was made aware that plaintiff and other civilly committed persons under the SVPA at the East Jersey State Prison ("EJSP") were being treated like prisoners because they are being housed in a segregation unit and have been subjected to pat searches and

ion finger searches for drugs when leaving the unit for activities.  (Complaint, ¶ 6, Statement of Claims).

Bondurant further complains that when he arrived at the EJSP on May 12, 2010, he did not receive treatment, and that his mail is sent to the Avenel facility.  (Id.).

In his amended Complaint, Bondurant states that, on May 12, 2010, when he was transferred to EJSP, he was confined in the south unit, separate from the general population.  Bondurant was told that the south unit was for "troublemakers."  This allegedly was confirmed by Mr. Conway on May 24, 2010.  However, at group therapy on May 26, 2010, the therapist said he was not aware of this designation for the south unit.  (Amended Complaint at ¶ 6).

On May 27, 2010, Bondurant complains that he was subjected to a pat down search and finger "ion" search for drugs when he left the south unit.  (Id.).  Finally, Bondurant broadly alleges that his stats on south unit prevents him from attending groups, modules, and open recreation on other units.  (Id.).

Bondurant seeks to be compensated for the mental stress of being placed back on prison property.  (Complaint and Amended Complaint, ¶ 7).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis.  Specifically, the court is required to identify cognizable claims

and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B). Accordingly, because Bondurant is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell

_____

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

5

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the

_____

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this <u>pro</u> <u>se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  <u>SECTION 1983 ACTIONS</u>

Bondurant brings this action pursuant to 42 U.S.C. § 1983, claiming that the actions of the defendants have violated his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

    IV.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous

civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.   ANALYSIS

A.   Transfer to Prison Facility Claim

The principal claim asserted in Bondurant's Complaint is that his transfer to a prison facility, as a civilly committed person under the SVPA, is unconstitutional.  In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community.  Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a

segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[3]  See Bagarozy v. Goodwin, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002).  Therefore, this Court finds that Bondurant's transfer, with the

_____

[3]  Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.  United States v. Comstock, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

11

SVP residents of the Kearny facility, to a segregated unit in the East Jersey State Prison does not, in and of itself, violate the U.S. Constitution's Due Process Clause.

Accordingly, the claim that plaintiff's transfer to a segregated unit within a prison facility is unconstitutional will be dismissed for failure to state a cognizable claim of a constitutional deprivation.

B. <u>Conditions of Confinement Claim</u>

Although plaintiff's transfer to a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Bondurant makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he is confined in the south unit, allegedly designated for "troublemakers," and that he is restricted from groups, modules and open recreation in other units at EJSP.   <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, <u>Bell v. Wolfish</u>, 441 U.S. 520, 536 (1979),[4] within

_____

[4]   In <u>Bell v. Wolfish</u>, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

the bounds of professional discretion, <u>Youngberg</u>, 457 U.S. at
321-22.  Specifically, in <u>Youngberg</u>, the Supreme Court held that
civilly committed persons do have constitutionally protected
interests, but that these rights must be balanced against the
reasons put forth by the State for restricting their liberties.
<u>Id</u>. at 307.  The Constitution is not concerned with <u>de minimis</u>
restrictions on patients' liberties.  <u>Id</u>. at 320.  Moreover, "due
process requires that the conditions and duration of confinement
[for civilly confined persons] bear some reasonable relation to
the purpose for which persons are committed."  <u>Seling</u>, 531 U.S.
at 265.  While the nature of an SVP's confinement may factor in
this balance of what is reasonable, it is clearly established
that the substantive due process protections of the Fourteenth
Amendment apply to SVPs. See <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061
(8th Cir. 2001)(applying the Fourteenth Amendment's "objective
reasonableness" standard to excessive force claims brought by
civilly committed SVPs).

Bondurant's main allegation with respect to the conditions
of his confinement relates to his contention that he is now
housed in the south unit, which is segregated from the general
population at EJSP.

The Third Circuit has held that placement of a civilly
committed SVP in segregated confinement does not violate due
process unless the deprivation of liberty is in some way extreme.
See <u>Deavers v. Santiago</u>, 243 Fed. Appx. 719, 721 (3d Cir.

2007)(applying <u>Sandin v. Conner</u>, 515 U.S. 472 (1995),[5] to segregated confinement of civilly committed SVPs).  <u>See</u> <u>also</u> <u>Thielman v. Leean</u>, 282 F.3d 478 (7th Cir. 2002)(likewise extending <u>Sandin</u> to civil commitment settings).  As stated above, Bondurant's complaints about the restrictions on his confinement are minimal.  He is not prevented from attending group or recreation, but is only limited to segregated activities.

Therefore, with respect to his conditions claims as alleged, this Court finds that Bondurant has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed without prejudice.  To the extent that Bondurant can allege facts to show that unconstitutional conditions of confinement exist, he may seek leave to re-open this case and file an amended pleading.[6]

---

[5]  In <u>Sandin</u>, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  <u>See</u> 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

[6]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Bondurant should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990)(footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>

C.  Interference with the Mail Claim

Bondurant next appears to assert that the delivery of his mail to the Annex, rather than directly to him at EJSP, violates his First Amendment rights.

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments.  Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006), cert. denied, 549 U.S. 1286 (2007).[7] However, an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner, the Supreme Court of the United States found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Id. at 89.  The Court established a balancing test pursuant to which

---

[7]  In Jones v. Brown, the United States Court of Appeals for the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. 461 F.3d at 358.  The Third Circuit also has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court."  Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Thus, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights.  <u>Turner</u>, 482 U.S. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  <u>Id</u>.

The United States Court of Appeals for the Third Circuit has applied <u>Turner</u> in analyzing constitutional claims by civilly committed SVPs.  <u>See</u> <u>Rivera v. Rogers</u>, 224 Fed. Appx. 148, 2007 WL 934413 (3d Cir. March 29, 2007)(applying <u>Turner</u> in analyzing claims of SVPs that opening of their packages violated their First Amendment rights).  Other courts likewise have applied <u>Turner</u> when analyzing claims brought by civilly committed SVPs alleging First Amendment violations.[8]  <u>See</u> <u>Willis v. Smith</u>, 2005

_____

[8]  Essentially, the First Amendment analysis under <u>Turner</u> mirrors the due process analysis under <u>Youngberg</u>; in both instances, courts must balance the constitutional interests of confined persons against the legitimate interests of the state-run institution in which they reside.  <u>See</u> <u>Beaulieu v. Ludeman</u>, 2008 WL 2498241, at *20 n. 15 (finding <u>Turner</u> to be consistent with <u>Youngberg</u> because "it will not allow a Program detainee's

WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs was substantially similar to that of prisoners and applying Turner to SVP claims concerning mail handling procedures); Ivey v. Mooney, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30, 2008)(applying Turner, but noting that a civil confinement is significantly different from a criminal confinement); Francis v. Watson, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing cases that have applied Turner in cases involving civilly confined persons); Marsh v. Liberty Behavioral Health Care, Inc., 2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), aff'd 330 Fed. Appx. 179 (11ᵗʰ Cir. 2009); Beaulieu v. Ludeman, 2008 WL 2498241, at *20 (D. Minn. June 18, 2008).

In Rivera, the Third Circuit affirmed the district court's ruling that a facility housing civilly committed SVPs has a legitimate interest in both the safety of its facility and the rehabilitation of its patients. Rivera, 224 Fed. Appx. at 151 (citing Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir. 1999)("[I]t is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders.")). Specifically, the court upheld as constitutional the STU's policy that allows staff to open packages not marked as "legal mail" to assure that the packages do not contain contraband (i.e., items either harmful to staff

right to be restricted unless there is a valid institutional reason for doing so").

and residents, or detrimental to rehabilitation).  The court found that plaintiff was free to send and receive mail so long as the content of his mail was not sexually explicit.  Moreover, the Third Circuit found no error in the district court's conclusion that there were no ready alternatives to mail security and that the STU's policy appeared to be the only viable alternative, thus supporting the reasonableness of the mail policy.  Rivera, 224 Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute that the staff at EJSP, where plaintiff and other SVP residents are newly housed, has a legitimate interest in both the safety of its facility and rehabilitating its patients.  As noted above, these civilly committed persons are convicted sexual predators, which makes safety at EJSP a very important concern.  The staff clearly must determine if any items coming through the mail pose a threat to the safety of the staff or the other residents.  They also must decide if any of the materials passing through the mail could be detrimental to a resident's therapy.  Consequently, as set forth by the Supreme Court and the Third Circuit, the Court must defer to the prison officials when it comes to issues of managing a safe and operational prison facility.  In this case, delivery of letters and packages at the Avenel facility located close by, where the staff is trained with respect to SVP issues unlike the general NJDOC staff at EJSP, assures that harmful materials are not being passed through the mail, but also allows

for specialized treatment regarding SVP residents.  This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above. Moreover, in his interference with the mail claim, Bondurant does not allege a single incident where his mail has not been delivered or received.[9]  Rather, his only complaint seems to be that his mail will be sent to another facility instead of EJSP where he now resides.  Bondurant does not articulate a claim that prison officials are intentionally delaying his mail.  Therefore, the Court will dismiss this claim without prejudice at this time, and allow Bondurant to file an amended pleading, consistent with the pleading requirements of Rule 8(a)(2) and amended pleading requirements of Rule 15 of the Federal Rules of Civil Procedure, as discussed in fn. 6 of this Opinion, supra, if Bondurant in fact wishes to pursue such a claim in the future.

D.   Unlawful Search Claim

Bondurant also alleges that the frequent "pat down" searches and ion finger searches for drugs when he leaves the south unit. It would appear that plaintiff is asserting that as a civilly committed person, such searches are unconstitutional and violate his rights under the Fourth Amendment.

---

[9]  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is
> fundamentally incompatible with the close and continual
> surveillance of inmates and their cells required to ensure
> institutional security and internal order.... [S]ociety
> would insist that the prisoner's expectation of privacy
> always yield to what must be considered the paramount
> interest in institutional security.... [I]t is accepted by
> our society that loss of freedom of choice and privacy are
> inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks
omitted).  The same conclusion was reached with respect to
pretrial detainees other than convicted prisoners.  See Bell v.
Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity
searches of pretrial detainees do not violate the Fourth
Amendment).[10]

Consequently, involuntarily committed patients and SVPs,
like pretrial detainees, are entitled to some protection under
the Fourth Amendment, but they do not have an expectation of
privacy equal to an individual in society generally.  See Serna
v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial
detainees are kept in custody because there is cause to believe
they are dangerous; similarly, commitment under Minnesota law as
a sexually dangerous person requires a finding of dangerousness),
cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d
1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that
advance goals such as preventing escape and assuring the safety

---

[10]   In Bell v. Wolfish, the United States Supreme Court, in
determining the constitutionality of post-visitation body cavity
searches, held that a reasonableness test should be employed when
examining the constitutionality of a search that encroaches upon
the personal privacy of an inmate and the integrity of the
inmate's body.  In other words, courts must balance the need for
the particular search against the invasion of personal rights
that the search entails.  Courts must consider the scope of the
particular intrusion, the manner in which it is conducted, the
justification for initiating it, and the place in which it is
conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley,
482 U.S. 78 (1987) (a prison regulation which infringes upon an
inmate's constitutionally recognized right is valid only if it is
reasonably related to a legitimate penological interest).

of others, even though they may not technically be "punished"),
cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d
211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003);
see also, Jennings v. New York State Office of Mental Health, 786
F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d
Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth
Circuit has held that, because SVPs have been civilly committed
subsequent to criminal convictions and have been adjudged to pose
a danger to the health and safety of others, they are subject to
"[l]egitimate, non-punitive government interests" such as
"maintaining jail security, and effective management of [the]
detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir.
2004). Thus, the reasonableness of a particular search or
seizure is determined by reference to the detention context and
is a fact-intensive inquiry. Id.

Here, with respect to his Fourth Amendment claim,
Bondurant's primary argument appears to be that any prison
actions that did not specifically take into account his
classification as a SVP is per se a constitutional violation.
Applying the balancing test employed by Wolfish, this Court finds
that the manner and place in which Bondurant was pat-searched and
finger-scanned were plainly reasonable and did not violate his
Fourth Amendment rights. First, the pat search and finger scan
were conducted when Bondurant was leaving or returning to the

22

south unit.  See Semler v. Ludeman, 2010 WL 145275, *19, D. Minn.
Jan. 8, 2010)(finding no Fourth Amendment violation where
plaintiffs were required to submit to pat searches following gym
use and kitchen work assignments that included removal of socks
and shoes, opening their mouths, showing their zippers, showing
behind their ears and running their fingers through their hair;
search was "not highly intrusive" and was "not unlike the scope
of searches of the general public at airport security
checkpoints).  See also Serna, 567 F.3d at 955-56 (upholding
reasonableness of a facility-wide visual body cavity search after
a cell phone case (cell phones considered contraband) was found,
because, while invasive, the searches were conducted privately,
safely, and professionally, and the facility was reacting to a
recurring problem involving contraband cell phones.

    Moreover, there are no allegations that the guards conducted
the pat search and finger scan in a menacing or degrading manner.
Bondurant does not allege that there was physical force used or
that the search was observed by any other SVP patients or by
staff members of the opposite sex.  Bondurant also does not
allege that the search was done in a menacing manner.  See
Kitchens v. Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010).
Accordingly, based on all of these factors, this Court will
dismiss Bondurant's Fourth Amendment unlawful search claim,
pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a
cognizable claim under § 1983.

E.   Interruption of Treatment Claim

Finally, Bondurant appears to assert that he is denied group therapy/treatment sessions because of the transfer to EJSP.  He contends that he will be denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937).  These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).  Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right.  See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302

(1993).  However, regulations not implicating fundamental rights
(in other words, those claims attacking particularly egregious or
arbitrary governmental actions) are analyzed under the
deferential standard referred to as the rational basis review,
and will generally succeed only if the government action shocks
the conscience.  See Glucksberg, 521 U.S. at 728.

     With respect to Bondurant's claim, it appears that he is
asserting that he has a fundamental right to adequate treatment
as a civilly committed sex offender.  The Supreme Court
established that there exists a constitutionally protected right
of mentally retarded persons confined at a state institution to
minimally adequate treatment.  Specifically, the Supreme Court
held that there is a constitutional right of mentally disabled
persons confined at a state institution to "minimally adequate
habilitation", self-care treatment or training to the extent
necessary to protect their recognized fundamental rights to
safety and freedom from physical restraints.  Youngberg, 457 U.S.
at 316, 319 and 322.

     The Supreme Court further held that, where a fundamental
right is at issue, a district court must balance "the liberty of
the individual and the demands of an organized society" to
determine whether such right has been violated.  Youngberg, 457
U.S. at 320.  Although restrictions burdening a fundamental right
generally receive strict scrutiny, in Youngberg, the Supreme
Court found that this sort of rigorous analysis would unduly

burden the ability of states, specifically their professional
employees, to administer mental health institutions.  Id. at 322.
Consequently, the Court concluded that "the Constitution only
requires that the courts make certain that professional judgment
was in fact exercised," because "[i]t is not appropriate for the
courts to specify which of several professionally acceptable
choices should have been made."  Id. at 321 (internal quotation
and citation omitted).  Thus, a decision, "if made by a
professional, is presumptively valid; liability may be imposed
only when the decision by the professional is such a substantial
departure from accepted professional judgment, practice, or
standards as to demonstrate that the person responsible actually
did not base the decision on such judgment."  Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United
States Court of Appeals for the Third Circuit held that New
Jersey's unique former statutory scheme for sex offenders that
predicated the term of sentence on a prisoner's response to
treatment and created a right to treatment created a fundamental
and cognizable liberty interest in treatment, for purposes of
both procedural and substantive due process analyses.  288 F.3d
at 545.  Leamer was not a civilly committed sex offender like
plaintiff here.  Rather, Leamer was a convicted sex offender
whose confinement and treatment were inextricably linked pursuant
to statute.  The sentencing court had classified Leamer as having
a "mental aberration" and in need of "specialized treatment,"

26

which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point.  Leamer could not reduce his sentence through good behavior credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence.  <u>Leamer</u>, 288 F.3d at 544.

Apart from that recognized in <u>Youngberg</u> to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in <u>Leamer</u> to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA.  Like Leamer, the length of Bondurant's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy. <u>See</u> <u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and **treatment** of sexually violent predators")(emphasis added); <u>N.J.S.A</u>. 30:4-34(b)("The Division of Mental Health Services in the Department

27

of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); <u>N.J.S.A.</u> 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); <u>see also Kansas v. Hendricks</u>, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....")(alterations in original)(internal citations omitted).

Therefore, based on <u>Youngberg</u> and <u>Leamer</u>, this Court concludes that Bondurant's liberty interest in treatment is fundamental and cognizable for purposes of both procedural and substantive due process analyses.  But <u>see Bailey v. Gardebring</u>, 940 F.2d 1150, 1154 (8th Cir. 1991), <u>cert</u>. <u>denied</u>, 503 U.S. 952 (1992)(where the Eighth Circuit noted that <u>Youngberg</u> did not establish a right for the civilly committed to treatment <u>per se</u>; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in

28

light of [the] liberty interest[ ] in safety and freedom from
unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322).
In Bailey, the Eighth Circuit concluded that plaintiff had no
right to "psychiatric treatment to overcome a 'sexual offender
condition'"  because he "was neither in danger during his civil
commitment nor was he subject to any restraints beyond the
ordinary incidents of any involuntary confinement." Id. at 1153,
1154.  Citing Bailey, district courts in the Eighth Circuit have
since concluded that civilly committed sexual predators have no
substantive due process right to mental health treatment,
adequate or otherwise.  See Semler v. Ludeman, 2010 WL 145275, at
*26 (D. Minn. Jan. 8, 2010)("Because this Court has not
recognized a constitutional right to effective 'treatment' in the
context of civilly committed sex offenders, Plaintiffs [alleging
substantive due process violations through ineffective treatment]
have failed to allege a due process claim ....")(citing
Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11,
2008)(finding, in ultimately concluding that involuntarily
committed sex offender's right to treatment is not "clearly
established" for purposes of 28 U.S.C. § 2254(d)(1), that
Youngberg "only recognized a right to 'minimally adequate'
treatment that reduces the need for restraints," and not
"comparable right to treatment that facilitates release")).

     Nevertheless, while this Court may recognize that Bondurant
has a fundamental and cognizable liberty interest in treatment,

based on the allegations and admissions by plaintiff in his Complaint and amended Complaint, this Court also determines that there has been no procedural or substantive due process violations at this time.

With respect to Bondurant's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit.  In <u>Leamer</u>, the Third Circuit, relying on <u>Sandin</u>, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  <u>Leamer</u>, 288 F.3d at 546.  In the instant case, Bondurant is not actually confined in administrative segregation for the purpose of punishment, but rather, he and the other SVP residents from the Kearny facility were transferred to a unit at EJSP separate and apart from the convicted prisoners.  Moreover, there is no absolute denial of treatment.  Indeed, plaintiff admits that he has attended group sessions, and actually refers to them in his Complaint and amended Complaint.

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience,"

or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Bondurant his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release")

Here, defendants have not categorically declined to provide any mental health treatment to the SVP residents at EJSP.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Bondurant's substantive due process rights.  Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Therefore, this Court concludes that any alleged short-lived disruption of therapy and treatment has not been shown to be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Bondurant's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at this time.

## V.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may seek leave to re-open this case to file an amended pleading to cure the deficiencies noted herein.  An appropriate order follows.


s/Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge

32