**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HOWARD BONDURANT, | : | |
| | : | Civil Action No. 10-3005 (FSH) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRIS CHRISTIE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> HOWARD BONDURANT, Plaintiff pro se
> #000384
> East Jersey State Prison, Special Treatment Unit
> CN 905, 8 Production Way
> Avenel, New Jersey 07001

**HOCHBERG**, District Judge

Plaintiff, Howard Bondurant, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., seeks to re-open this action that was dismissed without prejudice by Opinion and Order entered by this Court on November 22, 2011. (See Docket entry nos. 3 and 4). Plaintiff submitted his amended Complaint on January 25, 2011. (Docket entry no. 6). Plaintiff was granted in forma pauperis status in this action on November 22, 2011.

At this time, the Court must review the amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure

to state a claim upon which relief may be granted, or because it
seeks monetary relief from a defendant who is immune from such
relief.  For the reasons set forth below, the Court concludes
that this action should be dismissed for failure to state a
cognizable claim of a constitutional deprivation.

I.  <u>BACKGROUND</u>

Plaintiff, Howard Bondurant ("Bondurant"), filed his
original and first amended Complaint on June 14, 2010 and August
31, 2010, respectively.  In those first pleadings, Bondurant
asserted a violation of civil rights action, pursuant to 42
U.S.C. § 1983, against the following defendants: Chris Christie,
the Governor of New Jersey; Gary Lanigan, Commissioner of the New
Jersey Department of Corrections ("NJDOC"); Jennifer Velez,
Commissioner of the New Jersey Department of Human Services
("NJDHS"); Mrs. B. Hasting, Superintendent - Special Treatment
Unit ("STU"); Steven Johnson, Assistant Superintendent - STU; and
Merril Main, NJDHS Administrator.  (Complaint and Amended
Complaint, Caption and ¶¶ 4b-4f).

Bondurant alleged that, on May 18, 2010, defendant Steve
Johnson was made aware that plaintiff and other civilly committed
persons under the SVPA at the East Jersey State Prison ("EJSP")
were being treated like prisoners because they are being housed
in a segregation unit and have been subjected to pat searches and
ion finger searches for drugs when leaving the unit for

2

activities.  (Complaint, Docket entry no. 1, ¶ 6, Statement of
Claims).

Bondurant further complained that when he arrived at the
EJSP on May 12, 2010, he did not receive treatment, and that his
mail is sent to the Avenel facility.  (Id.).

In his first amended Complaint, Bondurant alleged that, on
May 12, 2010, when he was transferred to EJSP, he was confined in
the south unit, separate from the general population.  Bondurant
was told that the south unit was for "troublemakers."  This
allegedly was confirmed by Mr. Conway on May 24, 2010.  However,
at group therapy on May 26, 2010, the therapist said he was not
aware of this designation for the south unit.  (First Amended
Complaint, Docket entry no. 2, ¶ 6).

On May 27, 2010, Bondurant allegedly was subjected to a pat
down search and finger "ion" search for drugs when he left the
south unit.  (Id.).  Finally, Bondurant broadly alleged that his
status on south unit prevents him from attending groups, modules,
and open recreation on other units.  (Id.).

Bondurant sought to be compensated for the mental stress of
being placed back on prison property.  (Complaint and Amended
Complaint, ¶ 7).

In an Opinion and Order issued by this Court on November 22,
2010, Bondurant's action was dismissed, however, the Court
allowed Bondurant leave to amend his Complaint to cure certain

deficiencies with regard to some of his claims without prejudice. (Docket entry nos. 3 and 4).  In particular, Bondurant's claim challenging his transfer to a segregated unit within a prison facility as unconstitutional was dismissed with prejudice for failure to state a cognizable claim of a constitutional deprivation.  Bondurant's claim regarding the conditions of his confinement, namely his segregated status in the "south unit," alleged restrictions on his confinement that were minimal.  The Court found that plaintiff's allegations did not show that he was prevented from attending group or recreation, but was only limited to segregated activities.  Consequently, the conditions claim was dismissed without prejudice for failure to state a cognizable claim of a constitutional deprivation.  Likewise, the Court dismissed Bondurant's interference with his mail claim because plaintiff alleged only that his mail was to be sent to another facility instead of EJSP where he is confined and because Bondurant did not articulate a claim that prison officials were intentionally delaying his mail.  Bondurant's unlawful search claim regarding a finger scan or ion search also was dismissed for failure to state a claim.  Finally, Bondurant's claim alleging inadequate treatment was dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right.  (Docket entry no. 3).

4

In the present amended Complaint (Docket entry no. 6), Bondurant reasserts a § 1983 civil rights violation action against most of the same defendants, as follows: Chris Christie, the Governor of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Craig L. Conway, Administrator at the Adult Diagnostic and Treatment Center/Special Treatment Unit ("ADTC/STU"); Steven Johnson, Assistant Superintendent - ADTC/STU; and Merril Main, NJDHS Administrator.  (Amended Compl., Docket entry no. 6, Caption and Parties).  The amended Complaint also alleges the very same claims with no substantially new factual allegations. However, the amended Complaint does assert a new claim regarding the allowance of smoking in the facility where Bondurant is confined.

## II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

A district court is required to review a complaint in a civil action where the litigant is proceeding <u>in forma pauperis</u>. Specifically, the court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Cooper is proceeding <u>in forma pauperis</u> in this matter, this

5

action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S.

6

at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[1]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

7

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>. at 1948.  The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  <u>Id</u>. at 1949-50; <u>see</u>

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

---

[2]   In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  SECTION 1983 ACTIONS

Bondurant brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Environmental Smoke Claim

     In this amended Complaint, Bondurant raises a new claim.
Namely, Bondurant alleges that he is exposed to cigarette smoke
at EJSP/STU.  He alleges that there is a no smoking policy that
is not enforced and the commissary continues to sell tobacco
products.

     To state a claim based on involuntary exposure to
environmental tobacco smoke ("ETS"), plaintiff must show (1) "he
himself is being exposed to unreasonably high levels of ETS,"
Helling v. McKinney, 509 U.S. 25, 35 (1993); (2) "the risk of
which he complains is not one that today's society chooses to
tolerate," id. at 36; and (3) defendant-official was deliberately
indifferent to the serious risk to Plaintiff's future health from
such exposure.[3]  See Helling, 509 U.S. at 35–36; Ford v. Mercer
County Correctional Center, 171 Fed. Appx. 416 (3d Cir.2006);
Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003).  As to
deliberate indifference, "a prison official cannot be found

_____

     [3]  Because Bondurant is civilly committed, his ETS claim is
under the Due Process Clause of the Fourteenth Amendment.  See
Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982).  In determining
whether the constitutional rights of an involuntarily committed
person have been violated, the court must balance the
individual's liberty interests against the relevant state
interests with deference shown to the judgment exercised by
qualified professionals.  Id. at 321–22.  However, Eighth
Amendment standards are applicable to this claim.  See Rivera v.
Marcoantonio, 153 Fed. Appx. 857, 859 n. 1 (3d Cir. 2005);
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979).

11

liable ... for denying an inmate humane conditions of confinement
unless the official knows of and disregards an excessive risk to
inmate health or safety; the official must both be aware of facts
from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw the inference."
Atkinson, 316 F.3d at 262 (quoting Farmer v. Brennan, 511 U.S.
825, 837 (1994)).

    As to the objective component of the ETS claim, Bondurant
alleges only that there is a no smoking policy that is not
enforced and that the EJSP commissary sells tobacco products
unlike at the Ann Klein facility, the parent facility of the STU,
which has a no smoking policy and does not sell tobacco products
or allow staff to bring tobacco products in the facility.
Bondurant does not assert facts showing that "he himself is being
exposed to unreasonably high levels of ETS," which facts are
required to satisfy the objective element of the ETS claim.
Helling, 509 U.S. at 35.  Bondurant merely alleges that he is
exposed to environmental smoke at the EJSP/STU.  Indeed, the
minimal allegations asserted by Bondurant in his Amended
Complaint are almost identical to allegations found insufficient
to state a claim in Rivera v. Marcoantonio, 153 Fed. Appx. 857
(3d Cir. 2005)(complaint of improper ventilation and imperfect
enforcement of no-smoking policy failed to state claim where
plaintiff could escape ETS exposure by going to his cell).

Consequently, under these circumstances, Bondurant has not asserted facts establishing the objective component.[4]

Nor does Bondurant assert facts substantiating how each defendant was deliberately indifferent to a risk to Plaintiff's health from his exposure to ETS.  The Supreme Court has rejected a reading of the Constitution that "would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions."  Farmer, 511 U.S. at 838.  "[A] prison official cannot be found liable ... for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

---

[4]  Compare Helling v. McKinney, 509 U.S. 25, 35 (1993)(holding that bunking with a cell mate who smoked five packs of cigarettes per day exposed inmate to an unreasonable risk of future harm); Atkinson v. Taylor, 316 F.3d 257, 259 (3d Cir. 2003)(a prisoner who claimed that he shared a cell with constant smokers for many months satisfied objective component); Alvarado v. Litscher, 267 F.3d 648, 653 (7th Cir. 2001)(prisoner asserted that ETS exacerbated severe chronic asthma); Whitley v. Hunt, 158 F.3d 882, 887-88 (5th Cir. 1998)(prison doctor issued report noting that prisoner required non-smoking quarters), overruled on other grounds by Booth v. Churner, 532 U.S. 731, 735 (2001) with Rivera v. Marcoantonio, 153 Fed. Appx. 857 (3d Cir. 2005)(complaint of improper ventilation and imperfect enforcement of no-smoking policy failed to state claim where plaintiff could escape ETS exposure by going to his cell); Griffin v. DeRosa, 153 Fed. Appx. 851 (3d Cir. 2005)(allegations that restrooms in prison do not have ventilation and plaintiff has been exposed to ETS in the restrooms for 20 months fails to satisfy objective component); Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001)(sitting near smokers sometimes is not an unreasonable exposure to ETS); Pryor-El v. Kelly, 892 F. Supp. 261, 267 (D.D.C. 1995)(where plaintiff alleged "only that various unnamed inmates and prison officials smoke in the TV room, games room, and the letter writing room, allegations did not satisfy objective component).

inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference." Id. at 837.
Bondurant alleges that he told defendant Johnson that there is a
no smoking policy at EJSP that is not being enforced and Johnson
allegedly replied "You're not in DHS custody." (Amended Compl.,
Document entry no. 6 at ¶ 16). Bondurant also told Defendant
Main, who allegedly replied that "DHS is in charge of the
treatment and DOC is in charge of custody. ... I don't know what
to tell you." (Id. at ¶ 17). However, Bondurant alleges no
facts showing when each defendant became aware that plaintiff was
being exposed to unreasonably high levels of ETS. Nor does he
allege facts showing that each defendant responded unreasonably
after becoming aware. See Farmer, 511 U.S. at 843 ("[P]rison
officials who actually knew of a substantial risk to inmate
health or safety may be found free from liability if they
responded reasonably to the risk, even if the harm ultimately was
not averted"). Accordingly, this Court finds that Bondurant's
Amended Complaint does not assert enough specific, non-
conclusory, facts to substantiate the conclusion that each, or
any, defendant was deliberately indifferent to a health risk to
Bondurant posed by exposure to ETS. Because the Amended
Complaint fails to "contain sufficient factual matter, accepted
as true, to state a claim to relief that is plausible on its
face," Iqbal, 129 S.Ct. at 1949, this Court will dismiss this
claim in the Amended Complaint for failure to state a claim upon

which relief may be granted.  See Aruanno v. Green, 2011 WL
2490988 (D.N.J. June 22, 2011)(finding that amended complaint
failed to state specific, non-conclusory facts to substantiate
that defendants were deliberately indifferent to the health risk
to plaintiff posed by environmental smoke).

B.   Remaining Claims

     With the exception of the environmental smoke claim,
Bondurant's Amended Complaint (Docket entry no. 6) fails to
asserts any new or different facts to cure the deficiencies found
by this Court in the November 22, 2010 Opinion and Order.
Accordingly, for the same reasons as set forth in this Court's
November 22, 2010 Opinion (Docket entry no. 3), the Amended
Complaint (Docket entry no. 6) will be dismissed for failure to
state a claim upon which relief may be granted.

C.   Supervisor Liability

     Finally, it would appear from the allegations in the Amended
Complaint that Bondurant's claims against defendants, Chris
Christie, Governor of New Jersey; Gary Lanigan, Commissioner of
NJDOC; and Jennifer Velez, Commissioner of NJDHS, are based on
supervisor liability alone.

     As a general rule, government officials may not be held
liable for the unconstitutional conduct of their subordinates
under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at
1948; Monell v. New York City Dept. Of Social Servs., 436 U.S.
658, 691 (1978)(finding no vicarious liability for a municipal

15

"person" under 42 U.S.C. § 1983); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").  In <u>Iqbal</u>, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to <u>Bivens</u>[5] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  <u>Iqbal</u>, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  <u>Id</u>., 129 S.Ct. at 1949.

Under pre- <u>Iqbal</u> Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."  <u>Santiago v.</u>

---

[5] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)

16

Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal
quotation marks omitted).  "Particularly after Iqbal, the
connection between the supervisor's directions and the
constitutional deprivation must be sufficient to demonstrate a
plausible nexus or affirmative link between the directions and
the specific deprivation of constitutional rights at issue."  Id.
at 130.

     The Third Circuit has recognized the potential effect that
Iqbal might have in altering the standard for supervisory
liability in a § 1983 suit but, to date, has declined to decide
whether Iqbal requires narrowing of the scope of the test.  See
Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and
Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in
light of Iqbal, it is uncertain whether proof of personal
knowledge, with nothing more, provides sufficient basis to impose
liability upon supervisory official).  Hence, it appears that,
under a supervisory theory of liability, and even in light of
Iqbal, personal involvement by a defendant remains the touchstone
for establishing liability for the violation of a plaintiff's
constitutional right.  Williams v. Lackawanna County Prison, 2010
WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

     Facts showing personal involvement of the defendant must be
asserted; such assertions may be made through allegations of
specific facts showing that a defendant expressly directed the
deprivation of a plaintiff's constitutional rights or created

17

such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, plaintiff provides no facts describing how these supervisory defendants allegedly violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.  In short, Bondurant has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they were responsible for its agencies and employees and for developing and applying policies, practices and procedures at their respective agencies. These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will dismiss with prejudice the Amended Complaint (Docket entry no. 6), in its entirety, as against the defendants, Chris Christie, Governor of New Jersey; Gary Lanigan, Commissioner of NJDOC; and Jennifer

18

Velez, Commissioner of NJDHS, because it is based on a claim of
supervisor liability, which is not cognizable in this § 1983
action, pursuant to 28 U.S.C. § 1915(e)(2)(B).

V.  CONCLUSION

For the reasons set forth above, plaintiff's amended
Complaint will be dismissed with prejudice, in its entirety as
against named defendants, Chris Christie, Governor of New Jersey;
Gary Lanigan, Commissioner of NJDOC; and Jennifer Velez,
Commissioner of NJDHS, for failure to state a claim upon which
relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).
Further, plaintiff's exposure to environmental smoke claim will
be dismissed without prejudice as against all named defendants,
for failure to state a claim at this time, pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(ii).  Finally, plaintiff's remaining claims will
be dismissed with prejudice as against all named defendants for
failure to state a claim, pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii), because plaintiff's second attempt to amend
his Complaint fails to cure the deficiencies as set forth in this
Court's November 22, 2010 Opinion (Docket entry no. 3).  An
appropriate order follows.


                                   s/ Faith S. Hochberg
                                   FAITH S. HOCHBERG
                                   United States District Judge